UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA    )
                            )
         V.                 )    Criminal No. 05-10084-WGY
                            )
    RYAN W. MAGRO,
     Defendant.

## GOVERNMENTS' SENTENCING MEMORANDUM

The United States of America, by its attorney, Michael J. Sullivan, United States Attorney for the District of Massachusetts submits its sentencing memorandum with respect to Ryan Magro in the above-captioned matter.

## INTRODUCTION

As set out in more detail in the presentence report ("PSR") prepared by the Probation Office, this case arises out of the arrest of Ryan Magro ("Magro")in the District of New Mexico on June 30, 2004.  At that time, Magro was found to be in possession of methamphetamine and, on July 27, 2004, Magro was charged in a one-count indictment with Possession with Intent to Distribute 500 Grams or More of Methamphetamine, in violation of 21 U.S.C. §841(a)(1).  On March 24, 2005, Magro's case was transferred to the District of Massachusetts, pursuant to FRCP 20 for the purpose of pleading guilty.  Magro's change of plea hearing was scheduled for January 12, 2006.  However, in November 2005, Magro absconded and was not caught for over a year.  Magro pled guilty to Count One of

the indictment on December 18, 2006.

## THE GOVERNMENT'S POSITION.

1.  <u>The PSR calculations</u>.  Computation of the guideline
sentencing range remains the starting point for sentencing.  *See*
*United States v. Dixon,* 449 F.3d 194, 203–04 (1st Cir.2006); *United*
*States v. Gobbi* 471 F.3d 302, *313 (1st Cir. 2006).  As discussed
below, Magro's base offense level ("BOL") is 38, based on drug
quantity.  Two levels are added for obstruction of justice and two
subtracted under the safety valve provision.  Because Magro should
receive an obstruction of justice enhancement and has failed to
show    extraordinary    circumstances    meriting    acceptance    of
responsibility, his adjusted offense level ("AOL") remains 38.

A.  <u>Drug quantity</u>.  The drug quantity as found in the PSR is
3.0128 kilograms, weighing the substance as a whole, consisting of
1.6057 kilograms of pure methamphetamine.  PSR ¶36.  Pursuant to
USSG §2D.1(c)(3), using the weight of the entire substance, Magro's
BOL would be 34.[1]  Pursuant to USSG §2D1.1(c), using the weight of
the pure methamphetamine, the BOL would be 38.  Since Note B states
that the BOL is determined by the higher of the two methods of
measuring, Magro's BOL is 38.  The government notes that Magro does
not dispute this computation, but merely suggests that the BOL in

---

[1]The PSR cites the correct guideline section, but apparently
as the result of a clerical error states the BOL would be 32.

the plea agreement that was terminated by the United States should apply.  This argument is discussed below.

    B.  <u>Obstruction of Justice enhancement</u>.

As recommended in the PSR, Magro should receive a two-level enhancement pursuant to USSG §3C1.1 for obstruction of justice. Magro was transferred to the District of Massachusetts for the purpose of pleading guilty.  His change of plea hearing was scheduled for January 12, 2006.  However, while on pretrial release, Magro removed his electonic monitoring device and absconded.  An arrest warrant was issued for Magro on November 15, 2005.  However, he remain a fugitive for 14 months, until he was arrested on December 14, 2006.

Based on this conduct, which interfered with Magro's conviction and sentencing, he should receive a two-level enhancement for obstruction of justice.  Application Note 4(e) to USSG §3C1.1 provides, as an example of conduct covered by this enhancement, "escaping or attempting to escape from custody before trial or sentencing; or willfully failing to appear, as ordered, for a judicial proceeding."  Magro absconded escaping from his pretrial supervision, failing to appear at his scheduled change of plea hearing and  impeding efforts to convict and sentence him.

Under much less egregious circumstances, the First Circuit found that a defendant intended to obstruct justice as defined by

the guidelines where he merely made preparations to flee after having cut off his electronic monitoring bracelet. *United States v. Fournier*, 361 F.3d 42, 43-44 (1st Cir. 2004)(per curiam); *see also United States v. Abuhouran*, 161 F.3d 207 (3rd Cir. 1998) (defendant was stopped at airport attempting to flee after having cut off electronic monitoring device). Magro who successful evaded apprehension for over a year even more clearly obstructed justice.

Indeed, Magro's own description of his conduct shows his attempt to obstruct justice. While on pretrial release, he had started using illegal drugs again, and, when called by someone pretending to be his pretrial services officer to come in for a drug test, Magro fled, rather than take a drug test he knew would be positive. Magro's bipolar condition and use of drugs in no way vitiate his obstruction of justice. Although the First Circuit has not decided what level of intent is necessary to obstruct justice,[2] here Magro was plaining making a rational choice, deciding not to come in for his drug test. Moreover, Magro's evaluation by Dr. Fife in December 2006, has very little bearing on Magro's state of mind over a year earlier, thus there is no basis for Dr. Fife's conclusion. Magro remained a fugitive for fourteen months, demonstrating his decision to obstruct justice by not turning

---

[2]*See United States v. Fournier,* 361 F.3d 42, 43 (1st Cir. 2004) (per curiam)(declining to decide whether there must be a particularized finding that the defendant had a specific intent to obstruct justice to impose a §3C1.1 enhancement); *United States v. Hall,* 434 F.3d 42, 61 (1st Cir. 2006)(same).

himself in and facing the consequences of his criminal conduct.

B. <u>Safety Valve</u>.  As noted in the PSR, it is the position of the United States that Magro has met the criteria for the so-called safety valve, pursuant to USSG §2D1.1(b)(9).  For that reason, the mandatory minimum sentence of 10 years would not apply and two levels would be deducted from Magro's offense level.

C. <u>No downward adjustment for acceptance of responsibility</u>.

"[C]onduct result in an enhancement [for obstruction of justice] ordinarily indicates that the defendant has not accepted responsibility for his criminal conduct."  USSG §3E1.1 app.note 4. Acceptance of responsibility is not generally available to a defendant whose sentence has been enhanced for obstructing justice. *See Fournier,* 361 F.3d at 44; *Hall,* 434 F.3d at 62.  Once the Court grants an upward adjustment for obstruction of justice, a defendant bears the burden of demonstrating that his case is so "extraordinary" as to warrant an exception to the general rule that "[c]onduct resulting in an enhancement [for obstruction of justice] ordinarily indicates that the defendant has not accepted responsibility for his criminal conduct." USSG § 3E1.1, comment. (n.4); *see also United States v.. Gonzalez,* 12 F.3d 298, 300 (1st Cir. 1993).

Magro makes no such showing.  Magro's attempt to avoid punishment for his crime by absconding for over a year is the antithesis of acceptance of responsibility.  The United States was

forced to expend time and resources, attempting to track Magro down while he was a fugitive.  The fact that Magro considered turning himself in, but did not do so is indicative of lack of acceptance of responsibility.  In addition, when Magro was finally apprehended, he was found to be in possession of methamphetamine, demonstrating, by the commission of an additional crime, that he has not truly accepted responsibility for his earlier criminal behavior.  As Application Note 4 states, conduct constituting obstruction of justice ordinarily indicates that the defendant has not accepted responsibility for his criminal conduct.  Only in an "extraordinary cases" can adjustments under both §§3C1.1 and 3E1.1 apply.  There is nothing "extraordinary" about this case.

Magro argues that his circumstances are rendered extraordinary by his bipolar disorder and the fact that he conducted proffer sessions with the U.S. Attorneys Offices in New Mexico and Massachusetts.  Neither of these circumstances qualify him for acceptance of responsibility.  Obviously, Magro's bipolar disorder has no bearing on whether he accepts responsibility.  And, while Magro did proffer, his proffer with the U.S. Attorneys Office in Massachusetts came only after he had been arrested following 14 months as a fugitive.  Overall, Magro's lack of acceptance of responsibility, demonstrated by his 14-month flight and his commission of an additional crime, far outweighs his proffer to the government, which in any case, consisted largely of information

that Magro was required to reveal in order to be eligible for a two-level safety valve reduction.

**D.** **No downward departure should be given for Magro's mental health and emotional condition.**

Magro argues that he should receive a downward departure pursuant to USSG §§5K2.0 and 5H1.3, based on his mental and emotional condition.  He acknowledges this ground is disfavored and must be present to an exceptional degree.  There is no evidence about Magro's mental condition at the time he committed the crime. Dr. Fife's evaluation, conducted in December 2006, whatever value it may have for gauging Magro's previous mental states, says nothing about his mental condition at the time he committed the crime at issue, so that it is unclear if or how his bipolar condition was even manifesting itself.  Moreover, even if he was suffering one of the mood swings caused by his bipolar disorder or by drugs, this in no way suggests that there should be a downward departure.

In sum, the guideline calculations result in a BOL of 38, a two-level upward adjustment for obstruction of justice, a two-level downward safety valve adjustment and no adjustment for acceptance of responsibility.  The resulting AOL of 38, combined with Magro's CHC I, produces a guideline sentencing range of 235-293 months. The guideline fine range would be $25,000 to $4 million, pursuant to USSG § 5E1.2(c).

2.  <u>The plea agreement was terminated by the United States</u>.

Magro takes the position that the plea agreement, which contained a BOL of 34, is enforceable, despite the fact that he violated its terms and the United States informed him that it was terminating the agreement.  As provided in the plea agreement, the government sent written notice to the defendant, through his counsel, that its obligations under the plea agreement were terminated, due to the defendant's breaches of the agreement.  The letter, dated December 15, 2006, provided as follows:

> Your client, Ryan Magro, entered into a plea agreement with the United States on March 21, 2005.  Paragraph 11 of that agreement, entitled "Breach of Agreement," provides:
>
> If the U.S. Attorney determines that Defendant has failed to comply with any provision of this Agreement, has violated any condition of his pretrial release, or has committed any crime following his execution of this Agreement, the U.S. Attorney may, at his sole option, be released from his commitments under this Agreement in their entirety by notifying Defendant, through counsel or otherwise, in writing.
>
>    Mr. Magro violated the conditions of his pretrial release by absconding for over a year.  Moreover, at the time of his arrest, on September 14, 2006, Mr. Magro was in possession of methamphetamine, which constitutes a crime, as well as a violation of the conditions of his pretrial release.  For these reasons, the U.S. Attorney notifies the Defendant by this letter that the U.S. Attorney is hereby released from his commitments under the plea agreement in their entirety.

Therefore, the plea agreement has been abrogated, since the

government has withdrawn its agreement to it.[3]

**3.  The factors contained in 18 U.S.C. §3553.**

The Court must also consider the §3553 factors in fashioning a sentence.  One important factor contained in §3553 is the guidelines themselves.  In this case, the guidelines weigh in favor of a lengthy sentence based on the drug quantity and Magro's fugitive status.  The nature and circumstances of the offense and characteristics of the defendant do not weigh in favor of a reduced sentence.  The offense was a very serious one, involving a large quantity of methamphetamine.  Moreover, the characteristics of the defendant include his decision to disable his electronic monitoring device and abscond while on pretrial release as well as the fact that, when he was finally tracked down, Magro was in possession of methamphetamine, committing an additional crime.  He also admits to using drugs while on pretrial release.  This is not the profile of

---

[3]While the plea agreement contemplated that the government would recommend a three-level reduction for Acceptance of Responsibility, in Paragraph 3 of the agreement, the government specifically reserved the right not to recommend the three-level reduction if the defendant, inter alia, (1) engages in acts forming a basis for finding that the defendant has obstructed or impeded the administration of justice under USSG § 1B1.3; (2) intentionally fails to appear in Court or violates any condition of release, or; (3) commits a crime.  Magro engaged in all of these acts by absconding for over a year, thereby obstructing justice, intentionally failing to appear in Court, violating the conditions of his pretrial release and committing a crime (possession of methamphetamine).  Therefore, even if the plea agreement were still operative (which it is not -- the United States, under its terms, would not be required to, and would not, recommend a reduction for acceptance of responsibility.

a defendant whose personal characteristics suggest that he is likely to conform his behavior to the law. Moreover, Magro, in his sentencing memorandum argues that some of Magro's criminal behavior was caused by his bipolar disorder, which he left untreated while a fugitive. This suggests that Magro, upon release, is more likely to commit further crimes than the average defendant, arguing in favor of a more lengthy sentence. Although Magro has no criminal history points, it is simply not correct to say that the crime to which he pled guilty is a deviation from an otherwise law abiding life, given the other crimes he committed following his arrest on the instant offense. Deterrence should be an important factor in arriving at a sentence, given Magro's additional crimes, committed after he was arrested and knew he would be sentenced for the instant offense. The related factor of protecting the public from Magro's drug distribution activities also weighs heavily in the balance.

Possession of methamphetamine with intent to distribute, particularly in the very large quantity in this case, is an extremely serious crime and promoting respect for the law requires a long sentence. In addition, since Magro failed to get proper medical care while he was a fugitive because he lacked health insurance, there is no guarantee that he will receive proper treatment if left to his own devices.

In sum, the government recommends a term of imprisonment at

-10-

the bottom of the guideline range, 235 months' incarceration.

> Respectfully submitted,
> MICHAEL J. SULLIVAN
> United States Attorney
>
> By:  /s/ Jennifer H. Zacks
>      JENNIFER H. ZACKS
>      Assistant U.S. Attorney
>      United States Attorney's Office
>      One Courthouse Way, Suite 9200
>      Boston, MA 02210
>      (617) 748-3109

Dated: May 21, 2007

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that this document(s) filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on May 21, 2007.


<u>/s/Jennifer H. Zacks</u>
JENNIFER H. ZACKS
Assistant U.S. Attorney


Dated: December 19, 2006

-12-